2014 ND 231

Dennis and Charlene DECKERT,
Plaintiffs and Appellants

v.

Margaret L. McCORMICK and
Judy Hertz, Defendants
and Appellees.

No. 20140151.

Supreme Court of North Dakota.

Dec. 18, 2014.

Zachary E. Pelham (argued) and Benjamin W. Keup (appeared), Bismarck, N.D., for plaintiffs and appellants.

Micheal A. Mulloy (argued) and James J. Coles (argued), Bismarck, N.D., for defendants and appellees.

VANDE WALLE, Chief Justice.

[¶ 1]   Dennis and Charlene Deckert appealed from a summary judgment dismissing their action for a declaratory judgment and specific performance of an option to purchase certain Burleigh County real property and quieting title to the property in Margaret McCormick and Judy Hertz. Because we conclude there is no genuine issue of material fact that the Deckerts did not properly exercise the gratuitous option before it was revoked, we affirm the judgment.

I

[¶ 2]   McCormick resides in Menoken and Charlene Deckert and Hertz are two of her five children.  In 2006, McCormick owned 12 quarter sections of land in Burleigh County.  After hiring an attorney to assist her in estate planning, McCormick transferred two quarter sections of land to each child through quit claim deeds, reserving in herself life estates.  On March 7, 2006, McCormick granted an option to purchase the property at issue in this case

to the Deckerts. The option provided in relevant part:

> For and in consideration of the sum of Ten Dollars ($10), and other good, valuable and legally sufficient consideration, in hand paid by Buyers to Owner, Margaret L. McCormick, does herein and hereby grant to Buyers, or the survivor thereof, an option to purchase the following described property pursuant to the terms and conditions of this Option:
>
> [Property description]
>
> This Option to purchase shall remain in full force and effect until December 31, 2015, at which time this Option shall fully finally expire, in its entirety. At any time during the option period, Buyers, or the survivor thereof, or in the event of the death of both Buyers, the issue of the Buyers, shall be authorized to purchase the above-described property, or any quarter section thereof, for a purchase price of $200 per acre. The conveyances shall be by way of Warranty Deed conveying good and marketable title to the subject premises, subject only to easements and restrictions and mineral reservations presently of record. As to physical condition, the real property shall be conveyed "AS IS, WITH ALL FAULTS". To exercise the Option, Buyers shall tender the full purchase price, in cash, to Margaret L. McCormick, or her successors or assigns, at any time prior to December 31, 2015. Margaret L. McCormick, or her successors or assigns, as Owner, shall be responsible to deliver to Buyer abstracts of title to the subject premises, which abstracts shall be updated at Buyer's sole cost and expense. All real estate taxes shall be prorated to closing.

The Deckerts were not informed of this option until a week or two after its execution.

[¶ 3] Also on March 7, 2006, McCormick conveyed the same property through a quit claim deed to Hertz, reserving to herself a life estate:

> Grantor does hereby reserve, for the balance of her natural life, a life estate in and to the subject property which shall include the right to possess occupy and control the premises and to collect rents therefrom during Grantor[']s natural life, Grantor shall pay any and all costs and expenses necessary to maintain the premises and any and all real estate taxes assessed against the premises. The property shall not be subject to partition in the absence of a written consent by both Grantor and Grantee. Subject to a Farm Lease between Grantor and Donald A. McCormick and Ronda McCormick, as tenants, which Lease expires on December 31, 2015. Subject to an Option to Purchase granted to Charlene Deckert and Dennis Deckert, which expires on December 31, 2015.

[¶ 4] During the summer of 2012, the Deckerts informed McCormick they wanted to exercise the option and requested the abstract for the property, but McCormick would not give it to them. In October 2012, the Deckerts' attorney wrote McCormick a letter informing her the Deckerts "have decided to exercise that option" and asking her to "forward the abstracts to me so that they may be updated prior to the closing." The letter was not accompanied with a tender of the purchase price for the property. McCormick responded in a letter that "I have treated Charlene fairly," since granting the option "there has been many life changes," and "I am asking Charlene in good conscience to accept the 2 quarters I deeded to her and let Judy keep the 2 quarters I deeded to her. I will *not* furnish the abstracts. I will *not* sign off on my reserved life estate." Fol-

lowing additional correspondence between the Deckerts' attorney and McCormick, the Deckerts ultimately ordered a new abstract for the property and obtained financing for the purchase, but did not tender the purchase price to McCormick.

[¶ 5] In February 2013, the Deckerts brought this action against McCormick and Hertz for a declaratory judgment and specific performance of the option to purchase the property. In July 2013, the Deckerts moved for summary judgment. The district court denied the motion on September 30, 2013, noting that "[n]o cash or other form of payment was tendered by Deckerts to McCormick for purchase of the property." The court reasoned:

> There is no dispute that Deckerts did *not* tender the full purchase price to McCormick. The plain language of the Option to Purchase requires the Deckerts to tender the purchase price in order to exercise the option. The purchase price was specified in the Option to Purchase as $200.00 per acre. Thus, Deckerts were required to tender $64,000.00 (320 acres × $200/acre) to McCormick in order to exercise the Option to Purchase. As there has been no tender of the full purchase price by Deckerts to McCormick, Deckerts have not exercised the Option to Purchase. If the Option to Purchase has not been exercised, there is nothing to enforce.

[¶ 6] Following the district court's ruling, McCormick sent the following letter to the Deckerts on October 1, 2013:

> On March 7, 2006, I executed an option in favor of you for property legally described as [legal description]. On July 20, 2012, I indicated to you that ... I did not wish for you to exercise the option when I did not turn over the abstracts to you. Furthermore, on October 23, 2012, I sent a letter to your attorney stating that I will not furnish

the abstracts to you. It was my intention in each instance to inform you that the option was withdrawn and could no longer be exercised by you.

> To make the record clear without qualification, the March 7, 2006 option to purchase, recorded as Document Number 651722 at the Burleigh County Recorder's office, is revoked and withdrawn.

[¶ 7] McCormick and Hertz then moved for summary judgment dismissal of the Deckerts' action, arguing McCormick had unequivocally revoked the option before it was exercised. The Deckerts requested an extension of time to respond to the motion. The district court denied the Deckerts' request for additional time and granted the motion for summary judgment. The court ruled the option was given without consideration and therefore could be withdrawn at any time before acceptance. The court ruled the option required a tender of the purchase price to McCormick to exercise the option, and because it was undisputed the Deckerts never tendered the purchase price, they had not exercised the option. The court reasoned McCormick's October 1, 2013 letter revoked the option. The court dismissed the action, reasoning "[a]s the Option to Purchase was withdrawn prior to acceptance, there is nothing to enforce."

## II

[¶ 8] The Deckerts argue the district court erred in granting summary judgment dismissing their action.

[¶ 9] Our standard for reviewing summary judgments is well-established:

> "Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material

fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record."

*Capps v. Weflen*, 2014 ND 201, ¶ 7, 855 N.W.2d 637 (quoting *Anderson v. Zimbelman*, 2014 ND 34, ¶ 7, 842 N.W.2d 852).

### A

[¶ 10] The Deckerts argue the option to purchase became binding and irrevocable when they notified McCormick of their intention to exercise it and requested the abstract.

[¶ 11] We interpret options in accordance with the rules of contract interpretation contained in N.D.C.C. ch. 9–07. *See Alumni Ass'n of Univ. of North Dakota v. Hart Agency, Inc.*, 283 N.W.2d 119, 122 (N.D.1979). Under N.D.C.C. § 9–07–02, the language of an option "is to govern its interpretation if the language is clear and explicit and does not involve an absurdity." To obtain an enforceable right to the property under an option, the optionee must exercise the option within the time and upon the terms and conditions provided in the option agreement. *See Mason v. Haakenson*, 303 N.W.2d 557, 558 (N.D.1981). Any deviation from the terms of the offer contained in the acceptance is not binding on the optionor and does not result in an enforceable contract to purchase the property. *See id.; Western Tire, Inc. v. Skrede*, 307 N.W.2d 558, 563 (N.D.1981); N.D.C.C. § 9–03–18. "Courts generally construe the attempt to exercise an option strictly and require exact compliance because the optionee is free to exercise the option if he chooses, but an optioner is bound to perform if the option is properly exercised." *Langer v. Bartholomay*, 2008 ND 40, ¶ 21, 745 N.W.2d 649. In this case, the language of the option defining how it could be exercised states: "To exercise the Option, Buyers shall tender the full purchase price, in cash, to Margaret L. McCormick, or her successors or assigns, at any time prior to December 31, 2015."

[¶ 12] The Deckerts argue that providing the abstract was a "condition precedent" to tendering the full purchase price and that when they requested the abstract, they had accepted the offer which resulted in a binding and irrevocable contract to purchase the property. The Deckerts' argument is based on the language in the option stating the "conveyances shall be by way of Warranty Deed conveying good and marketable title to the subject premises," and "Margaret L. McCormick, or her successors or assigns, as Owner, shall be responsible to deliver to Buyer abstracts of title to the subject premises, which abstracts shall be updated at Buyer's sole cost and expense." The Deckerts rely on several cases to demonstrate delivery of the abstract was a condition precedent to tender of the purchase price here, but none of the cases support their argument.

[¶ 13] For example, *Kennedy v. Dennstadt*, 31 N.D. 422, 425–26, 154 N.W. 271 (1915), involved an installment contract for the purchase of real estate which required a payment of $1,000 on the date of execution and the delivery by the seller of an abstract of title within 90 days of the contract's execution, which was before the second installment payment was due. After paying $1,000 and not receiving the abstract within 90 days, the plaintiff sued to recover the $1,000 payment. *Id.* This Court held furnishing the abstract by the defendant seller was a condition precedent because the agreement clearly provided that the purchaser was to receive the abstract before the second installment was due. *Id.* at 432, 154 N.W. at 274. The terms of the option in this case do not require that McCormick furnish the abstract before the Deckerts exercise the option by tendering the purchase price.

[¶ 14] The Deckerts rely on a series of cases holding that acceptance of an option for the sale of land converts the option into a binding executory contract of sale, and payment of the purchase price is merely performance of the executory contract. *See, e.g., Northern Plains Alliance, L.L.C. v. Mitzel*, 2003 ND 91, ¶ 16, 663 N.W.2d 169; *Kuhn v. Hamilton*, 117 N.W.2d 81, 83 (N.D.1962); *Horgan v. Russell*, 24 N.D. 490, 496, 140 N.W. 99, 101 (1913). But these cases did not involve an option agreement like the one in this case which required tender of the full purchase price as the method for exercising the option. Indeed, we have specifically pointed out " *'[w]here the exercise of the option to purchase does not provide for payment of the purchase price coincident with the optionee's exercise of the option*, the payment of the purchase price is merely an incident of performance of the bilateral contract created by the exercise of the option.' " *Mitzel*, at ¶ 16 (quoting *Matrix Props. Corp. v. TAG Invs.*, 2000 ND 88, ¶ 17, 609

N.W.2d 737 (emphasis added)). The Deckerts' construction of the option in this case eliminates the required method for exercising the option and would convert the specified payment of the purchase price into a normal incident of a bilateral contract of sale which is created by the exercise of an option.

[¶ 15] The Deckerts also rely on *Overboe v. Overboe*, 160 N.W.2d 650 (N.D.1968), to argue "[w]hen a provision of a contract provides that marketable title to property is to be furnished, a seller is required to furnish an abstract as a condition precedent to the payment of the purchase price." However, *Overboe* involved an option agreement that did not specify how the option could be exercised or whether an abstract had to be furnished by the seller, and the Court held "where the option agreement fails to mention an abstract the seller is under no obligation to submit an abstract, although it is his obligation to furnish merchantable title." *Id.* at 655. Here, the option specifically required the ultimate conveyance to be through a warranty deed "conveying good and marketable title to the subject premises" and placed the responsibility upon McCormick "to deliver to Buyer abstracts of title to the subject premises," but only after the option had been exercised by tendering "the full purchase price, in cash" to McCormick. Under *Overboe*, if a seller has no implied obligation to deliver an abstract where the terms of the option are silent on the subject, there is nothing improper or absurd about a provision requiring the furnishing an abstract after the option has been exercised by tendering the purchase price.

[¶ 16] The option in this case is clear and unambiguous. "To exercise the Option, Buyers shall tender the full purchase price, in cash, to Margaret L. McCormick, or her successors or assigns, at any time

prior to December 31, 2015." The Deckerts have not done so. We conclude the district court did not err in ruling as a matter of law that the Deckerts have not exercised the option.

B

[¶ 17] The Deckerts argue the district court erred in ruling no consideration was given for the option because they presented evidence to create a genuine issue of material fact on the question.

[¶ 18] If the option was supported by consideration, the Deckerts have until December 31, 2015, to exercise the option. *See, e.g., Estate of Jorstad,* 447 N.W.2d 283, 285 (N.D.1989). ("It is general hornbook law that an option is a continuing offer which, if supported by consideration, becomes a legally binding promise to keep the offer open through the time specified in the option.") If no consideration was given for the option, the option was gratuitous and McCormick could withdraw it at any time before acceptance. *See, e.g., Pifer v. McDermott,* 2013 ND 153, ¶ 11, 836 N.W.2d 432 ("If no consideration is given for an option to purchase real property, the option 'may be withdrawn at any time before acceptance.'" (internal citation omitted)).

[¶ 19] The option in this case contains a consideration clause stating it was given "[f]or and in consideration of the sum of Ten Dollars ($10), and other good, valuable and legally sufficient consideration, in hand paid by Buyers to Owner." However, N.D.C.C. § 9–05–10 provides that a written instrument is only "presumptive evidence" of consideration, and this Court has long held "[t]he recitals in a deed as to the consideration, are not conclusive, but the true and actual consideration may be shown by proof *aliunde.*" *Fraley v. Bentley,* 46 N.W. 506, 1 Dakota 25, 26 Syll. 5, 33, 46 N.W. 506, 507 (1874). "The burden

of showing a want of consideration sufficient to support an instrument lies with the party seeking to invalidate or avoid it." N.D.C.C. § 9–05–11. We recognize that in *Four Season's Healthcare Ctr., Inc. v. Linderkamp,* 2013 ND 159, ¶ 13, 837 N.W.2d 147, we quoted a passage from *Erickson v. Wiper,* 33 N.D. 193, 206–07, 157 N.W. 592, 596–97 (1916), which in turn had quoted from Devlin on Deeds § 823 (3d Ed.), stating "[t]he only effect of th[e] consideration clause in a deed is to estop the grantor from alleging that the deed was executed without consideration." However, this statement of the law was not only rejected by the Court in the earlier case of *Fraley,* 1 Dakota at 33, 46 N.W. at 507, but we have not found, and the Deckerts have not drawn our attention to, any North Dakota cases holding a grantor is estopped from claiming a deed was executed without consideration. *See, e.g., Guthmiller Farms, LLP v. Guthmiller,* 2013 ND 248, ¶¶ 12–15, 840 N.W.2d 636 (addressing grantors' argument that there was invalid consideration for an option despite consideration clause). Because statutes allow the parties to a written instrument to challenge the existence of consideration, and N.D.C.C. § 1–01–06 provides there is no common law where the law is declared by the code, we conclude McCormick is not estopped from asserting the option was gratuitous and given without consideration.

[¶ 20] The existence of consideration is a question of law, but whether consideration has passed is a question of fact. *See Guthmiller,* 2013 ND 248, ¶ 12, 840 N.W.2d 636; *Jorstad,* 447 N.W.2d at 285. Although questions of fact are usually inappropriate for summary judgment, questions of fact may become questions of law for a court to decide if reasonable persons could not differ. *See Pifer,* 2013 ND 153, ¶ 19, 836 N.W.2d 432. Here, it is undisputed that the Deckerts did not pay

McCormick $10 for the option. McCormick stated in an affidavit that she executed the option without the knowledge of the Deckerts as part of her estate planning, the Deckerts were unaware of the option and did not learn of it until weeks after its execution, she never received any consideration for the option, and the "Deckerts never did any work for me in consideration of me granting the option to them." Charlene Deckert stated in an affidavit that she ·first learned of the option weeks after it was executed and the Deckerts had assisted McCormick with labor and equipment while working the cattle on McCormick's ranch. The Deckerts argue the ranch work constituted consideration for the option. While Charlene Deckert's affidavit would certainly support the finding of a gift, it does not raise a genuine issue of material fact that the ranch work was done in exchange for the option.

[¶ 21] We conclude the district court did not err in ruling as a matter of law that the option was given without consideration and was revoked before acceptance.

### III

[¶ 22] The Deckerts argue the district court abused its discretion in refusing to grant their N.D.R.Civ.P. 56(f) motion for additional time to respond to the summary judgment motion.

[¶ 23] Under N.D.R.Civ.P. 56(f), the movant must identify what particular information is sought, how it would preclude summary judgment, and why it has not been previously obtained. *See, e.g., Hayden v. Medcenter One, Inc.,* 2013 ND 46, ¶ 8, 828 N.W.2d 775. A decision on a N.D.R.Civ.P. 56(f) motion is within the court's discretion, and we will not reverse that decision unless the court acted in an arbitrary, unreasonable, or unconscionable manner, or if it misinterpreted or misapplied the law. *Hayden,* at ¶ 8. The Dec-

kerts' attorney stated in an affidavit that depositions and documents were necessary to determine "how the parties intended the Option at issue be exercised...." The option unambiguously states how the option could be exercised. If an executed document is unambiguous, parol evidence is not admissible to contradict its terms. *See, e.g., Pamida, Inc. v. Meide,* 526 N.W.2d 487, 490 (N.D.1995).

[¶ 24] We conclude the district court did not abuse its discretion in refusing the Deckerts' request for additional time to respond to the motion for summary judgment.

### IV

[¶ 25] We do not address other arguments raised because they either are unnecessary to the decision or are without merit. Because the option was a gift that was not exercised before it was revoked, we affirm the judgment.

[¶ 26] DALE V. SANDSTROM, DANIEL J. CROTHERS, LISA FAIR McEVERS and CAROL RONNING KAPSNER, JJ., concur.